COPY

1   JOHN M. SORICH (CA Bar No. 125223)
    jsorich@adorno.com
2   S. CHRISTOPHER YOO (CA Bar No. 169442)
    cyoo@adorno.com
3   LASHON HARRIS (CA Bar No. 257578)
    lharris@adorno.com
4   ADORNO YOSS ALVARADO & SMITH
    A Professional Corporation
5   1 MacArthur Place, Suite 200
    Santa Ana, California 92707
6   Tel: (714) 852-6800
    Fax: (714) 852-6899
7
8   Attorneys for Defendant
    CALIFORNIA RECONVEYANCE
    COMPANY
9

FILED

2009 SEP 21 PM 4:

CLERK U.S. DISTRICT C
CENTRAL DISTRICT OF C
SANTA ANA

10

11

12

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

13  MCLUDY A. ATENDIDO, ELIZABETH      CASE NO.: EDCV09 -1791 SGL (RCx)
    I. ATENDIDO,
14
            Plaintiffs,                NOTICE OF REMOVAL
15
16  v.

17  CALIFORNIA RECONVEYANCE            Action Filed:    August 11, 2009
    COMPANY, WASHINGTON MUTUAL
18  BANK, AND DOES 1-10 INCLUSIVE,

19          Defendants.

20

21  **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

22      **PLEASE TAKE NOTICE THAT** defendant California Reconveyance

23  Company ("CRC" or "Defendant"), respectfully files this Notice of Removal, pursuant

24  to 28 U.S.C. §§ 1441 *et seq.* to remove the above-captioned matter from the Superior

25  Court of the State of California for the County of Riverside, in which the case is now

26  pending, to the United States District Court for the Central District of California. In

27  support thereof this Notice, CRC states as follows:

28      1.   On or about August 11, 2009, 2009, plaintiffs Mcludy A. Atendido and

                                    1

1093948.2

1   Elizabeth I. Atendido (collectively "Plaintiffs") filed their Complaint in the Superior

2   Court of the State of California for the County of Riverside, case number RIC533390

3   ("State Action").

4      2.      On or around August 12, 2009, Plaintiffs improperly served the

5   Summons and Complaint by certified mail addressed to CRC at 9200 Oakdale

6   Avenue, Chatsworth, California 91311.  Such service was improper since CRC's

7   registered agent for service of process is CT Corporation System, 818 West Seventh

8   Street, Los Angeles, California 90017, and since CRC is not an out of state defendant.

9   It is a California corporation.  Thus, this Notice of Removal is timely pursuant to 28

10  U.S.C. § 1446(b) because it is filed even before proper service of the Complaint has

11  been made on CRC.  In addition, this Notice of Removal is filed within thirty days of

12  CRC's initial receipt of the Summons and Complaint.  A copy of the Summons and

13  Complaint; are collectively attached hereto as Exhibit "1," as required by 28 U.S.C. §

14  1446(a).  CRC has not received any other process, pleadings or orders.

15     3.      Plaintiffs allege in the Complaint that CRC has violated, among other

16  things, the Home Owner Equity Protection Act ("HOEPA"), the Truth in Lending Act

17  ("TILA"), 15 U.S.C. § 1601 *et seq.,* the Real Estate Settlement Procedures Act

18  ("RESPA"), and the Fair Credit Reporting Act ("FCRA").  *See* Complaint, pp. 15-19.

19  Under 28 U.S.C. § 1441(b), "[a]ny civil action of which the district courts have

20  original jurisdiction founded on a claim or right arising under the Constitution, treaties

21  or laws of the United States shall be removable without regard to the citizenship or

22  residence of the parties." 28 U.S.C. § 1441(b).  Here, Plaintiffs allege that

23  "Defendants violated HOEPA by numerous acts and material omissions" and "further

24  violated HOEPA by failing to make additional disclosures, including…the right to

25  rescind the transaction[.]" *See* Complaint, ¶¶ 64-67.  In addition, Plaintiffs also allege

26  that "Defendants accepted charges for rendering of real estate services which were in

27  fact charges for other than services actually performed" in violation of RESPA.  *See,*

28  Complaint, ¶¶ 73.   Plaintiffs also allege that Defendants violated other federal laws,

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

2

NOTICE OF REMOVAL

including, TILA and the FCRA. *See,* Complaint, ¶¶ 75-84. As such, a federal question arises as to whether CRC is subject to the HOEPA, TILA, RESPA, FCRA and has committed violations of these Acts.

4.     CRC will give written notice of the filing of this Notice of Removal to Plaintiffs, and will file a copy of this Notice of Removal with the Superior Court of the State of California for the County of Riverside, as required by 28 U.S.C. § 1446(d).

5.     Washington Mutual Bank has not yet appeared in this Action. To date, there is no indication that Washington Mutual Bank has been served with the Summons and Complaint in this action. To date, Plaintiffs have not filed a proof of service in this regard. No consent is necessary as to all other defendants, including Does 1 through 100, because upon information and belief, those defendants have not been served.

6.     Payment of the appropriate fees and costs for removal and docketing of this matter in federal court, if any, are tendered with this Notice.

WHEREFORE, CRC respectfully requests that this action proceed in this Court as an action properly removed hereto.

DATED: September 21, 2009

ADORNO YOSS ALVARADO & SMITH
A Professional Corporation

By: _____
JOHN M. SORICH
S. CHRISTOPHER YOO
LASHON HARRIS
Attorneys for Defendant
CALIFORNIA RECONVEYANCE
COMPANY

1093948.2

# EXHIBIT 1

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CALIFORNIA RECONVEYANCE COMPANY, et al

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Mcludy A. Atendido



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 11 2009

V. Reyes

---

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Riverside, Western Branch
4050 Main Street, Riverside, CA 92501

CASE NUMBER:
*(Número del Caso):* RIC 533391

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mcludy A. Atendido
492 Old Trail Drive, Chula Vista, CA 91914   Tel: 619 962-3629

DATE: **AUG 11 2009**
*(Fecha)*

Clerk, by _____, Deputy
*(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [✓] as the person sued under the fictitious name of *(specify):*
       Corporations

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [✓] other *(specify):* Conspirator
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. | www.USCourtForms.com

1
Mcludy A. Atendido
2
Elizabeth I. Atendido
492 Old Trail Drive
3
Chula Vista, California 91914

4
In Pro per

5

6

7
**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8
**FOR THE COUNTY OF RIVERSIDE - WESTERN COUNTY DIVISION**

9

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 11 2009

V. Tover

| | |
|---|---|
| 10   Mcludy A. Atendido, | ) CASE NO.   RIC   509399 |
| 11   Elizabeth I. Atendido, | ) |
|      Plaintiffs, | ) COMPLAINT FOR DAMAGES: |
| 12   | ) |
| 13   | ) 1. VIOLATIONS HOME OWNER EQUITY |
|      | )    PROTECTION ACT |
| 14   | ) 2. VIOLATIONS OF REAL ESTATE SETTLEMENT |
|      | )    PROCEDURES ACT |
| 15   Vs. | ) 3. VIOLATION OF FEDERAL TRUTH-IN-LENDING ACT |
|      | ) 4. VIOLATIONS OF FAIR CREDIT REPORTING ACT |
| 16   | ) 5. FRAUDULENT MISREPRESENTATION |
| 17   | ) 6. BREACH OF FEDUCIARY DUTY |
|      | ) 7. UNJUST ENRICHMENT |
| 18   | ) 8. CIVIL CONSPIRACY |
|      | ) 9. CIVIL RICO |
| 19   CALIFORNIA RECONVEYANCE COMPANY, | ) 10. SLANDER OF TITLE |
| 20   WASHINGTON MUTUAL BANK, | ) 11. USURY AND FRAUD |
|      AND DOES 1-10 INCLUSIVE, | ) 12. INTENTIONAL INFLICTION OF EMOTIONAL |
| 21            Defendants. | )    DISTRESS |
| 22   | ) |

23
**DEMAND FOR JURY TRIAL**

24
COME NOW , Plaintiffs Mcludy A. Atendido, and Elizabeth I. Atendido (herein after "The

25
Atendido" or "Homeowners") to Complain and alleges to the following:

26

27

28

1

1.     Plaintiffs Mcludy A. Atendido, and Elizabeth I. Atendido are male and female individuals both adult and are the legal owners of the property set forth in paragraph below, and was doing so at all times.

2.     The real property which is owned by the Plaintiffs at all times is commonly known as 31214 East Pointe Court, Menifee, CA 92584-7921

       LOT 48 (THE "LOT") OF TRACT NO. 28582, AS SHOWN ON THE SUBDIVISION MAP ("MAP") FILED IN THE BOOK 352, PAGES 12 TO 19 INCLUSIVE OF MAPS, IN THE OFFICE OF THE RIVERSIDE COUNTY RECORDER.

3.     Plaintiffs "Atendido", owned and resided on the property pursuant to "GRANT DEED" recorded on 30 DECEMBER 2004.

4.     Defendant, CALIFORNIA RECONVEYANCE COMPANY, is an entity unknown to the Plaintiffs, and conspired, to performed foreclosure on the property.

5.     Defendant, WASHINGTON MUTUAL BANK, is an entity unknown to the Plaintiffs, and conspired, to performed foreclosure on the property.

6.     The Plaintiffs are ignorant of the true names of Defendants, named as Does 1-10, inclusive, and therefore the Plaintiffs will amend this complaint to allege their true names and capacities when such are ascertained. The Plaintiffs are informed and believes thereon alleges that each of the fictitiously named defendants are legally responsible for the occurrences and damages herein alleged, and acted in concert with, and in agency with the specifically named Defendants herein.

**NATURE OF THE ACTION**

1. This case arises out of Defendants' egregious and ongoing and far reaching fraudulent schemes for improper use of Plaintiffs identity, negligent and/or intentional misrepresentation of acting as real party in interest upon which Plaintiffs was contractually bound to rely and factually entitled to rely,

1    fraud in the inducement, fraud in the execution, usury, and breaches of contractual and fiduciary

2    obligations as Mortgagee or "Trustee" on the Deed of Trust, "Special Servicer" and Trustee,

3    respectively, of certain mortgage loans pooled together in a trust fund.

4

5    2. The Defendants scheme described herein have devised business plans to deceived and denied the

6    Plaintiffs right of property and make profits to satisfy the defendants greed for unlawful enrichment

7    at the expense of Plaintiffs.

8    3. In addition to seeking compensatory, consequential and other damages, Plaintiffs seeks declaratory

9    relief as to what (if any) party, entity or individual or group thereof is the owner of the promissory note

10   executed at the time of the loan closing, and whether the Deed of Trust (Mortgage)

11
     secures any obligation of the Plaintiffs, and A Mandatory Injunction requiring reconveyance of the
12
     subject property to the Plaintiffs or, in the alternative a Final Judgment granting Plaintiffs Quiet Title
13

14   in the subject property.

15                                              **FACTS**

16   Relevant Facts of this Case

17
     4. Plaintiffs are the nominal payor on the subject promissory Note. The Loan Seller is a financial
18
     institution that was paid a fee to pose as a residential mortgage lender, when in fact the source of loan
19
20   funds and the actual lender and underwriter (Mortgage Aggregator and Investment Banker) were

21   other parties whose identities and receipt of fees and profits were withheld from Plaintiffs by the

22   Defendants contrary to the requirements of Federal Law and applicable State Law.

23   5. Unknown to Plaintiffs, the Defendants, acting in concert as principal in its relationships with the real

24
     party in interest of the property and the mortgage broker and mortgage originator, induced the
25
26   Plaintiffs into a transaction that did not and could not meet normal underwriting standards for a

27   residential mortgage. The Loan Seller posed as a conventional mortgage lender thus leading Plaintiffs

28                                                  3

to reasonably believe that the Loan Seller, the mortgage broker, and the loan originator had an interest

in the success (repayment of the loan) of the transaction that Plaintiffs was induced to believe was

being executed at the time of the "closing" of the subject loan transaction.

6. In fact, the Loan Seller, mortgage broker, appraiser, loan originator, title agent, escrow agent, and

Trustee on the Deed of Trust, had no significance stake (liability) in the transaction and no interest

other than obtaining Plaintiffs signatures on a "loan" that could never be repaid, contrary to

representations and assurances from the conspiring participants in this fraudulent scheme. In fact, the

"Appraisal" was intentionally and knowingly inflated along with other loan data to justify the closing of

the "loan transaction."

7. Plaintiffs relied upon the due diligence of the apparent "Lender" (i.e., actually the Loan Seller) in

executing and accepting the closing documents. In fact, no "lender" was involved in the closing in the

sense of an entity performing due diligence and evaluation pursuant to national standards for

underwriting and evaluating risk of loaning money in a residential loan closing.

8. Thus no bank or other financial institution actually performing under the standards, rules and

regulations governing such institutions was the "lender" which is the basis for Plaintiffs cause of action

for usury, to wit: that the inflated appraisal added an undisclosed cost to the loan which when added

to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan"

exceeds the limits set by the State legislature for usury and is not subject to exemption because the

presence of a financial institution in the transaction was a ruse in which the form of the transaction

covered over and mislead the Plaintiffs as to the real parties in interest and the fees generated by the

production of the subject "loan transaction."

9. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never

4

disclosed to Plaintiffs and have only recently been discovered by Plaintiffs through consultation with experts in securitization of residential mortgage loans, and diligent research including the filings of some parties with the Securities and exchange Commission which disclose the normal manner of operating this fraudulent scheme.

10. Defendants scheme is totally in violation of numerous Act such as: Real Estate Settlement Procedures Act, the Truth in Lending Act, and other applicable state and Federal Statutes.

11. The Loan Seller was named as the Payee on the subject promissory note and the beneficiary under the mortgage terms allegedly securing the performance under the subject note. The "Trustee" was named as the Trustee on the Deed of Trust executed at the time of the alleged "closing" of the "loan transaction." In accordance with State law, the Deed and terms of security were recorded in the county records.

12. Notwithstanding the above, and without the knowledge of the Plaintiffs, the Loan Seller had entered into Assignment and Assumption Agreements with one or more parties and Pooling and Service Agreements with one or more parties including but not limited to the mortgage aggregator prior to or contemporaneously with the "Closing" of the subject "loan transaction."

13. Under the terms of these agreements, the Loan Seller received a sum of money, usually n receiving an application for a loan equal to the gross amount of the loan sought by Plaintiffs plus a fee which was allocated to the subject loan transaction.

14. Contrary to the documents presented before and during the "closing" of the "loan transaction" the Loan Seller was neither the source of funding nor the "Lender."

15. Thus at the time of recording, the source of funding and the "Lender" was a different entity than the nominal mortgagee or beneficiary under the deed of trust and was neither named nor disclosed in any fashion.

5

16. The security for the "loan" thus secured an obligation that had been paid in full by a third party. Said third party(ies) was acting as a financial institution or "Lender" without even having been chartered or registered to do so despite regulations to the contrary from laws and rules of State or Federal authorities and/or agencies.

17. Some form of documentation represented by the Loan Seller to the Mortgage Aggregator was presented before or contemporaneously with the "closing" of the loan" transaction. In some cases the documentation included actual copies of the documents presented at "Closing."

18. Plaintiffs has discovered that the "loan closing" either did not take place at all or included documentation substantially different than the original offer and acceptance and substantially different than what could have been reported to the Mortgage Aggregator prior to the "closing." Plaintiffs has discovered in which foreclosure has proceeded despite the fact that no loan closing was ever consummated, no papers were ever signed, or the loans were properly rescinded properly under law.

19. Plaintiffs does not know what version of documentation was presented to the Mortgage Aggregator and if the Mortgage Aggregator took one or more varying descriptions of the alleged "loan documents" into more than one pool of assets which was eventually sold for the purpose of securitizing the assets of the pool which included the subject loan transaction either once or more than once.

20. There is no assignment of the subject mortgage in the county records, but there is a nonrecorded Pooling and Services" Agreement and a non-recorded Assignment and Assumption Agreement which appears to substitute the Trustee over the pooled assets for the nominal Trustee in the Deed of Trust.

21. The powers of this second Trustee were in turn transferred to either a Trustee for a Special Investment Vehicle (which performed the accounting and reporting of the pool assets) or to an investment bank Collateral Debt Obligation manager whose department performed the accounting and reporting of the pool assets.

22. The reporting of the pool assets consisted principally of descriptions of the notes "signed" by borrowers and limited descriptions of the general terms of the note such that the note appeared to be more valuable than the initial terms of payment by the "borrower."

23. The note from the subject "loan transaction" was eventually allocated into a new corporation (Special Purpose Vehicle) formed for the express purpose of holding the pooled assets under certain terms.

24. The terms included the allocation of payments from one note to pay any deficiency in payment of another note in unrelated "loan transactions" contrary to the terms of each such note which required payments to be allocated to the principal, interest, escrow and fees associated with only that specific "loan transaction."

25. Whether such "deficiency" was caused by the difference between the higher general terms of description of the note or the lower actual payment requirements from the "borrower" is not known.

26. If there is a holder in due course of the Plaintiffs note arising from the subject "loan transaction" it is the investors who purchased said securities (certificates). Some of said securities are held by the original purchaser thereof, others were sold at weekly auction markets, others were paid by re-sales of property that was "secured", others were paid from prepayments, others were paid by sale at full or partial price to the investment bank that originated the entire transaction, some of which might be held by the Federal Reserve as nonrecourse collateral, and others might have been paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralization of the segment

7

1  of the pool that secured the relevant investor who owned certificates backed by a pool of assets that

2  included the subject "loan transaction."

3
4  27. It is doubtful that any of the Defendants have any knowledge or have made any effort to

5  determine whether the putative holders in due course have been paid in whole or in part. It can only

6  be said with certainty that these Defendants seek to enforce loan documents for which they have

7  already been paid in full plus illegal fees for participating in an illegal scheme. These Defendants seek

8  to add insult to injury by demanding ownership of the property in addition to the receipt of payment in

9  full long before any delinquency or default even allegedly occurred.

10
11  28. In order for these Defendants to maintain legal standing in connection with the subject loan

12  transaction they are required to show the entire chain of title of the note and the entire chain

13  of title of the mortgage.

14  29. Plaintiffs are left in the position of being in an adversary proceeding with ghosts. While these

15  Defendants have informally offered or considered providing indemnification for any third party claims,

16  the fact remains that any relief awarded these defendants, any standing allowed to these defendants

17  would expose the Plaintiffs to multiple claims and suits from an unknown number of parties and

18  entities that all claim, possibly correctly, to the holders in due course. Any grant of act certificate of

19  title to an entity other than Plaintiffs or the nominal mortgagee creates an incurable defect in title.

20
21  30. There is no recording of any document in the county records which predates the Defendants

22  attempt to initiate foreclosure and/or eviction or which would authorize them to proceed.

23  31. The fact that the "loan" was table-funded without a disclosed source of funds and without

24  disclosing tens of thousands of dollars in fees all contrary to the requirements of state and federal law

25  was withheld from Plaintiffs by Defendants and continues to be withheld by them. But for the

26
27
28
8

expenditure of time, money and effort on research, Plaintiffs would not have discovered the various deceptions of the Defendants at the alleged loan closing.

32. Plaintiffs alleges the closing was an "alleged loan closing" because in fact it was part of an undisclosed hidden illegal scheme to issue unregulated securities (mortgage backed securities) based upon the negotiation of non-negotiable notes, the terms of which had been changed, altered, amended or modified AFTER the execution by the Plaintiffs.

33. The note was not negotiable because it was no longer an unconditional promise to pay by the original borrower. The terms had changed, adding conditions to payment that were inherent in the "securitization process" that Defendants fraudulently promoted.

34. The result of this was that notes from other borrowers wherein there was virtually no possibility of performance were disguised as being of the same class as Plaintiffs Note.

35. These disguised notes carried interest rates sometimes as high as 16.5% which under disguise were then sold to unsuspecting investors as triple AAA investments providing the investor with approximately 6-8% return.

36. By selling virtually worthless "negotiable" paper at par or in the case of toxic waste paper, 2-5 times par, the enterprise defendant reaped profits in the hundreds of thousands of dollars on each such "transaction." for example, if the toxic waste paper would under cover of Plaintiffs credit rating and identity was sold at an investment return of 6% and the mortgage note carried a principal balance of $300,000, the enterprise Defendants sold the "investment" certificates on that "loan" for approximately $740,000 and thus received $440,000 in illegal, fraudulent and undisclosed "profits" or "fees" in a $300,000 mortgage transaction.

9

37. Thus the economics of mortgage origination changed, to wit: the worse the loan, the more money the enterprise defendants made as long as there were enough people, like Plaintiffs, whose identify was used to hide the high volume ( and high profit) of toxic waste loans.

38. It was thus in the financial interest of the enterprise Defendants to create unrealistic and false market expectations, deceiving the public as a whole in specified geographical areas of the country that were identified by these enterprise Defendants as targets.

39. Since these illegal profits were not disclosed, the Plaintiffs is entitled to an accounting and a pro rate share of the profits obtained by the illegal, improper and undisclosed use of Plaintiffs name, credit rating and identity.

40. Based upon the opinion of Plaintiffs experts, Plaintiffs share of said profits would be in excess of $1 million.

41. While the Plaintiffs would never have entered into a transaction in which the true nature of this scheme was revealed, any profits, refunds, rebates, fees, points, costs or other income or gain should be credited on some basis to said borrowers including Plaintiffs herein.

## GENERAL ALLEGATIONS

42. The end result of the false and misleading representations and material omissions of Defendants as to the true nature of the mortgage loan actually being processed, which said Defendants had actual knowledge was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Plaintiffs' stated intentions and directions to said Defendants at the time of original application for the loan, fraudulently caused Plaintiffs to execute predatory loan documents.

43. At no time whatsoever did Defendants ever advise Plaintiffs (nor, as far as Plaintiffs can determine, any "investor" in certificates of mortgage-backed securities) that:

43.1. the mortgage loan being processed was not in their best interest;

43.2. that the mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Plaintiffs was providing cover for Defendants' illegal activities.

43.3. that Plaintiffs would like to satisfy the commercial interest of the real party interest once the true lender or true holder(s) in due course appeared;

43.4. that the originating "lender", and/or undisclosed third parties, had no intention of retaining ownership interest in the mortgage loan or fully servicing same and in fact may have and probable had already pre-sold the loan, prior to closing, to a third party mortgage aggregator pursuant to previously executed documentation (Assumption and assignment Agreement, Pooling Services Agreement, etc. all executed prior to Plaintiffs "loan Closing."

43.5. that the mortgage loan was actually intended to be repeatedly sold and assigned to multiple third parties, including one or more mortgage aggregators and investment bankers (including but not limited to Defendants DOES 1-10), for the ultimate purpose of bundling the Plaintiffs' mortgage with hundreds or perhaps thousands of others as part of a companion, support, or other tranche in connection with the creation of a REMIC security known as a Collateralized Mortgage Obligation ("CMO"), also known as a "mortgage-backed security" to be sold by a securities firm (and which in fact ended up as collateral for Asset-Backed Securities Certificates, created the same year as the closing);

43.6. that the mortgage instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default;

43.7. that in connection with the multiple downline resale and assignment of the mortgage and Promissory Note that assignees or purchasers of the Note may make "pay-downs"

11

against the Note which may affect the true amount owed by the Plaintiffs on the Note;

43.8. that a successive assignee or purchaser of the Note and Mortgage may not, upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan (also known as prohibition against increased forced-placed coverage) without the Plaintiffs' prior notice and consent;

44. As a result of the closing and in connection therewith, Defendants placed the Plaintiffs into a pool of a sub-prime adjustable rate mortgage programs, with Defendants intentionally misleading Plaintiffs and engaging in material omissions by failing to disclose to Plaintiffs and the fact that the nature of the mortgage loan applications had been materially changed without Plaintiffs knowledge or consent, and that Plaintiffs was being placed into a pool where the usual loan was an adjustable rate mortgage program despite borrowers not being fully qualified for such a program.

45. Prior to the closing, Defendant Quicken Loans and/or undisclosed third parties failed to provide to Plaintiffs the preliminary disclosures required by the Truth-In- Lending Act pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) sec. 226.17 and 18, and failed to provide the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA") pursuant to 24 FR sec. 3500.6 and 35007, otherwise known as the GFE.

46. Defendants Quicken Loans and/or undisclosed third parties also intentionally failed and/or provide Plaintiffs with various disclosures which would indicate to the Plaintiffs that the consumer credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the final TIL showed a "fixed rate" schedule of payments, but did not provide the proper disclosures of the actual contractually-due amounts and rates.

47. Defendants failed to provide a HUD-1 Settlement Statement at the closing which reflected the true cost of the consumer credit transaction. As Defendants failed to provide an accurate GFE or Itemization

12

of Amount Financed ("IOAF"), there was no disclosure of a Yield Spread Premium ("YSP", which is

required to be disclosed by the Truth-In-Lending Act) and thus no disclosure of the true cost of the

loan.

48. As a direct and proximate result of these failures to disclose as required by the Truth-In–

Lending Act, Defendant MOTION received a YSP in a substantial amount of without preliminary

disclosure, which is a *per se* violation of 12 CFR sec. 226.4(a), 226.17 and 18(d) and (c)(1)(iii). The YSP

raised the interest rate which was completely unknown to or approved by the Plaintiffs, as they did not

received the required GFE or IOAF.

49. In addition, the completely undisclosed YSP was not disclosed by Defendant in their broker

contract, which contract was blank in the area as to fees to be paid to Defendant. This is an

illegal kickback in violation of 12 USC sec. 2607 as well as State law which gives rise to all

damages claims for all combined broker fees, costs, and attorneys' fees.

50. The Amount Financed within the TIL is also understated which is a material violation of 12

CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602(u), as the Amount Financed must be

completely accurate with no tolerance.

51. Defendants were under numerous legal obligations as fiduciaries and had the responsibility

for overseeing the purported loan consummation to insure that the consummation was legal,

proper, and that Plaintiffs received all legally required disclosures pursuant to the Truth-In-

Lending Act and RESPA both before and after the closing.

52. Plaintiffs, not being in the consumer lending, mortgage broker, or residential loan business,

reasonably relied upon the Defendants to insure that the consumer credit transaction was legal,

proper, and complied with all applicable laws, rules, and Regulations.

13

53. At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering Defendants "creditors" within the meaning of the Truth-In-Lending Act, 15 U.S.C. sec. 1602(f) and Regulation Z sec. 226.2 (a)(17).

54. At the closing of the subject "loan transaction", Plaintiffs executed Promissory Notes and Security Agreements in favor of Defendants as aforesaid. These transactions, designated by Defendants as a Loan, extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants.

55. Defendants' violations were all material in nature under the Truth-In-Lending Act.

56. Said violations, in addition to the fact that Plaintiffs did not properly receive Notices of Right to Cancel, constitute violations of 15 USC sec. 1635(a) and (b) and 12 CFR sec. 226.23(b), and are thus a legal basis for and legally extend Plaintiffs' right to exercise the remedy of rescission.

57. Defendants assigned or attempted to assign the Note and mortgage to parties who did not take these instruments in good faith or without notice that the instruments were invalid or that Plaintiffs had a claim in recoupment. Pursuant to ORC sec. 1303.32(A)(2)(b)(c) and (f), Defendants are not a holder in due course and is thus liable to Plaintiffs, individually, jointly and severally.

58. On information and belief and given that the consumer credit transaction was an intertemporal transaction with multiple assignments as part of an aggregation the Defendants shared in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiffs out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiffs of their residence; acted in concert and

14

conspiracy to essentially steal the Plaintiffs' home and/or convert the Plaintiffs' home without

providing Plaintiffs reasonably equivalent value in exchange; and conducted an illegal enterprise within

the meaning of the RICO statute.

59. On information and belief and given the volume of residential loan transactions solicited and

processed by the Defendants, the Defendants have engaged in two or more instances of

racketeering activity.

## Claims for Relief

### COUNT I: VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT

60. Plaintiffs reaffirm and re-allege the above paragraphs 1-59 hereinabove as if set forth more

fully herein below.

61. In 1994, Congress enacted the Home Ownership Equity Protection Act ("HOEPA") which is

codified at 15 USC sec. 1639 et seq. with the intention of protecting homeowners from

predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain

defined disclosures and prohibits certain terms from being included in home loans. In the event of

noncompliance, HOEPA imposes civil liability for rescission and statutory and actual damages.

62. Plaintiffs are "consumers" and each Defendant is a "creditor" as defined by HOEPA. In the

mortgage loan transaction at issue here, Plaintiffs were required to pay excessive fees, expenses, and

costs which exceeded more than 10% of the amount financed.

63. Pursuant to HOEPA and specifically 15 USC sec. 1639(a)(1), each Defendant is required to make

certain disclosures to the Plaintiffs which are to be made conspicuously and in writing no later than

three (3) days prior to the closing.

64. In the transaction at issue, Defendants were required to make the following disclosure to

Plaintiffs by no later than three (3) days prior to said closing:

15

64.1. "You are not required to complete this agreement merely because you have received

these disclosures or have signed a loan application. If you obtain this loan, the lender will have a

mortgage on your home. You could lose your home and any money you have put into it, if you do not

meet your obligation under the loan."

65. Defendants violated HOEPA by numerous acts and material omissions, including but not

limited to:

65.1. (a) failing to make the foregoing disclosure in a conspicuous fashion;

65.2. (b) engaging in a pattern and practice of extending credit to Plaintiffs without regard to

their ability to repay in violation of 15 USC sec. 1639(h).

66. By virtue of the Defendants' multiple violations of HOEPA, Plaintiffs have a legal right to

rescind the consumer credit transaction the subject of this action pursuant to 15 USC sec.

1635. This Complaint is to be construed, for these purposes, as formal and public notice of

Plaintiffs Notice of Rescission of the mortgage and note.

67. Defendants further violated HOEPA by failing to make additional disclosures, including but

not limited to Plaintiffs not receiving the required disclosure of the right to rescind the

transaction;

68. Defendants failed to provide an accurate TIL disclosure; and the amount financed being

understated.

69. As a direct consequence of and in connection with Plaintiffs' legal and lawful exercise of their right

of rescission, the true "lender" is required, within twenty (20) days of this Notice of Rescission, to:

69.1. (a) desist from making any claims for finance charges in the transaction;

69.2. (b) return all monies paid by Plaintiffs in connection with the transaction to the Plaintiffs;

69.3. (c) satisfy all security interests, including mortgages, which were acquired in the transaction.

16

70. Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiffs shall tender all sums to which the true lender is entitled.

71. Based on Defendants' HOEPA violations, each of the Defendants is liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

71.1. (a) rescission of the mortgage loan transactions;

71.2. (b) termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction;

71.3. (c) return of any money or property paid by the Plaintiffs including all payments made in connection with the transactions;

71.4. (d) an amount of money equal to twice the finance charge in connection with the transactions;

71.5. (e) relinquishment of the right to retain any proceeds; and

71.6. (f) actual damages in an amount to be determined at trial, including

71.7. (g) attorneys' fees.

**COUNT II: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT**

72. Plaintiffs reaffirm and reallege paragraphs 1-59 above herein as if specifically set forth more fully herein below.

73. As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq.

73. In violation of 12 USC sec. 2607 and in connection with the mortgage loan to Plaintiffs, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

74. As a result of the Defendants' violations of RESPA, Defendants are liable to Plaintiffs in an

amount equal to three (3) times the amount of charges paid by Plaintiffs for "settlement services" pursuant to 12 USC sec. 2607 (d)(2).

## COUNT III: VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT

75. Plaintiffs reaffirm and reallege paragraphs 1-59 above hereinabove as if set forth more fully Herein below.

76. Defendants failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiffs incident to the extension of credit to the Plaintiffs and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z

77. sec. 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(d). Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note.

78. By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(c), 18(d), and 22.

79. Defendants' failure to provide the required disclosures provides Plaintiffs with the right to rescind the transaction, and Plaintiffs, through this public Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind the transaction.

## COUNT IV: VIOLATION OF FAIR CREDIT REPORTING ACT

80. Plaintiffs reaffirm and reallege paragraphs 1-59 above as if set forth more fully herein below.

18

81. At all times material, Defendants qualified as a provider of information to the Credit Reporting

Agencies, including but not limited to Experian, Equifax, and TransUnion, under the Federal Fair Credit

Reporting Act. 65. Defendants wrongfully, improperly, and illegally reported negative information as to

the Plaintiffs to one or more Credit Reporting Agencies, resulting in Plaintiffs having negative

information on their credit reports and the lowering of their FICO scores.

81.1. The negative information included but was not limited to an excessive amount of debt

into which Plaintiffs was tricked and deceived into signing.

82.Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiffs are entitled to maintain a private cause of

action against Defendants for an award of damages in an amount to be proven at the time of

trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiffs,

including emotional distress and humiliation.

83. Plaintiffs are entitled to recover damages from Defendants for negligent non-compliance with the

Fair Credit Reporting Act pursuant to 15 USC sec. 1681(o).

84. Plaintiffs are also entitled to an award of punitive damages against Defendants for their willful

noncompliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(n)(a)(2) in an amount

to be proven at time of trial.

**COUNT V: FRAUDULENT MISREPRESENTATION**

85.Plaintiffs reaffirm and reallege paragraphs 1-59 above as if set forth more fully herein below.

86. Defendants knowingly and intentionally concealed material information from Plaintiffs which is

required by Federal Statutes and Regulations to be disclosed to the Plaintiffs both before and at the

closing.

87. Defendants also materially misrepresented material information to the Plaintiffs with full

knowledge by Defendants that their affirmative representations were false, fraudulent, and

19

1   misrepresented the truth at the time said representations were made.

2   88. Under the circumstances, the material omissions and material misrepresentations of the

3   Defendants were malicious.

4

5   89. Plaintiffs, not being an investment banker, securities dealer, mortgage lender, mortgage

6   broker, or mortgage lender, reasonably relied upon the representations of the Defendants in

7   agreeing to execute the mortgage loan documents.

8   90. Had Plaintiffs known of the falsity of Defendants' representations, Plaintiffs would not have

9   entered into the transactions the subject of this action.

10

11   91. As a direct and proximate cause of the Defendants' material omissions and material

12   misrepresentations, Plaintiffs have suffered damages.

13

14   **COUNT VI: BREACH OF FIDUCIARY DUTY**

15   92. Plaintiffs reaffirm and re-allege paragraphs 1-59 above as if set forth more fully herein below.

16   93. Defendants, by their actions in contracting to provide mortgage loan services and a loan

17   program to Plaintiffs which was not only to be best suited to the Plaintiffs given their income

18   and expenses but by which Plaintiffs would also be able to satisfy their obligations without

19

20   risk of losing their home, were "fiduciaries" in which Plaintiffs reposed trust and confidence,

21   especially given that Plaintiffs were not and are not investment bankers, securities dealers,

22   mortgage lenders, mortgage brokers, or mortgage lenders.

23   94. Defendants breached their fiduciary duties to the Plaintiffs by fraudulently inducing Plaintiffs to

24   enter into a mortgage transaction which was contrary to the Plaintiffs stated intentions; contrary to

25   the Plaintiffs interests; and contrary to the Plaintiffs preservation of their home.

26

27   95. As a direct and proximate result of the Defendants' breaches of their fiduciary duties,

28

1 Plaintiffs have suffered damages.

2 96. Under the totality of the circumstances, the Defendants' actions were willful, wanton,
3 intentional, and with a callous and reckless disregard for the rights of the Plaintiffs justifying
4
5 an award of not only actual compensatory but also exemplary punitive damages to serve as a
6 deterrent not only as to future conduct of the named Defendants herein, but also to other persons or
7 entities with similar inclinations.

8 **COUNTVII: UNJUST ENRICHMENT**

9 97. Plaintiffs re-allege and reaffirm paragraphs 1-59 above as if set forth more fully herein below.
10 98. Defendants had an implied contract with the Plaintiffs to ensure that Plaintiffs understood all fees
11
12 which would be paid to the Defendants to obtain credit on Plaintiffs' behalf and to not charge any fees
13 which were not related to the settlement of the loan and without full disclosure to Plaintiffs.
14 99. Defendants cannot, in good conscience and equity, retain the benefits from their actions of
15 charging a higher interest rate, fees. rebates, kickbacks, profits (including but not limited to
16 from resale of mortgages and notes using Plaintiffs identity, credit score and reputation without
17 consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and YSP fee
18
19 unrelated to the settlement services provided at closing.
20 100. Defendants have been unjustly enriched at the expense of the Plaintiffs, and maintenance of the
21 enrichment would be contrary to the rules and principles of equity.

22 100.1. Defendants have also been additionally enriched through the receipt of PAYMENT
23 from third parties including but not limited to investors, insurers, other borrowers, the
24 United States Department of the Treasury, and the United States Federal Reserve.
25
26 100. Plaintiffs thus demand restitution from the Defendants in the form of actual damages,
27 exemplary damages, and attorneys' fees.

28
21

1

**COUNT VIII: CIVIL CONSPIRACY**

2
101. Plaintiffs reaffirm and re allege paragraphs 1-59 above as if set forth more fully herein below.

3
102. In connection with the application for and consummation of the mortgage loan the subject

4
of this action, Defendants agreed, between and among themselves, to engage in actions and a

5
course of conduct designed to further an illegal act or accomplish a legal act by unlawful

6
means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the

7
Plaintiffs.

8

9
103. Defendants agreed between and among themselves to engage in the conspiracy to defraud for

10
the common purpose of accruing economic gains for themselves at the expense of and detriment to

11
the Plaintiffs.

12
104. The actions of the Defendants were committed intentionally, willfully, wantonly, and with

13
reckless disregard for the rights of the Plaintiffs.

14

15
104. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud

16
and breaches of fiduciary duties, Plaintiffs have suffered damages.

17
105. Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

18
**COUNT I X: CIVIL RICO**

19
106. Plaintiffs reaffirm and re-allege paragraphs 1-59 above as set forth more fully herein below.

20
107. Defendants are "persons" as defined by CA Penal Code Sections 186-168.8.

21
108. The conspiracy, the subject of this action has existed from date of application to the present, with

22
23
the injuries and damages resulting therefrom being continuing.

24
109. Defendants' actions and use of multiple corporate entities, multiple parties, and concerted

25
and predetermined acts and conduct specifically designed to defraud Plaintiffs constitutes an

26
27
"enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the

28
22

1    Plaintiffs through the use of intentional nondisclosure, material misrepresentation, and

2    creation of fraudulent debt through fraudulent loan documents.

3    110. Each of the Defendants is an "enterprise Defendant".

4

5    111. As a direct and proximate result of the actions of the Defendants, Plaintiffs have and

6    continue to suffer damages.

7    **COUNT X SLANDER OF TITLE AGAINST ALL DEFENDANTS**

8    112. Plaintiffs re-affirm and re-allege paragraphs 1-59 above as set forth more fully herein below.

9    113. The recognized California cause of action sounding in tort, for "slander of title" concerns one who,

10
     without privilege of justification to do so , publishes matter which is untrue, false, and disparaging to
11
     another's real property.
12

13   114, Defendants and each of them, and Does 1-5, did so wrongfully, intentionally and recklessly do all

14   such acts.

15   115. Defendants and each of them wrongfully published a notice of default and then wrongfully

16   foreclosed on the subject property.

17
     116. Pursuant to California Civil Code section 2924(a)(1)(C) only the actual beneficiary/owner of the
18
     deed of trust or a beneficiary assignee or agent thereof may cause to be recorded against any real
19
20   property either a Notice of default or Notice of Trustee's sale.

21   117. By doing the aforementioned acts, defendants, and each of them, and Does 1-5 "slandered" the

22   Plaintiffs rights of possession and title to their property.

23
     118. The conduct of such defendants, and each of them, and Does 1-5, among others, violated
24
     California Civil Code sections  2924(a)(1)(C), and therefore all such conduct was not privilege or
25
26   protected.

27   119. The defendants conduct caused the Plaintiffs to suffer damages in an amount within the limits of

28
                                    23

1  this honorable court , according to proof at the time of trial.

2  120. Plaintiffs is ignorant of the true names and capacities of defendants sued herein as DOES 1-5

3  inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this

4
   complaint to allege their true names and capacities when ascertained.
5

6  121. Plaintiffs is informed and believes and thereon alleges that, at all times herein mentioned,

7  each of the defendants sued herein was the agent and employee of each of the remaining

8  defendants and was at all times acting within the purpose and scope of such agency and employment.

9  122. Plaintiffs is informed and believes and thereupon alleges that and each of the Defendants claim or

10 might claim an interest in the property adverse to Plaintiffs herein. However, the claim of said
11
   Defendants is without any right whatsoever, and said Defendant have no legal or equitable right, claim,
12
13 or interest in said property.

14 123. Plaintiffs therefore seeks a declaration that the title to the subject property is vested in

15 Plaintiffs alone and that the defendants herein, and each of them, be declared to have no estate, right,

16 title or interest in the subject property and that said defendants and each of them, be forever enjoined
17
   from asserting any estate, right, title or interest in the subject property adverse to Plaintiffs herein.
18
19 124. WHEREFORE, in this Count, Plaintiffs prays this Court will enter judgment against defendants and

20 each of them, as follows:

21 124.1. For an order compelling said Defendant, and each of them, to transfer or release legal title and

22 alleged encumbrances thereon and possession of the subject property to Plaintiffs herein;

23 124.2. For a declaration and determination that Plaintiffs is the rightful holder of title to the
24
   property and that Defendant herein, and each of them, be declared to have no estate, right, title or
25
26 interest in said property;

27 124.3. For a judgment forever enjoining said defendants, and each of them, from claiming any estate,

28
                                              24

1    right, title or interest in the subject property;

2    124.4. For costs of suit herein incurred;

3    124.5. For such other and further relief as the court may deem proper.

4    **COUNT XI  USURY and FRAUD**

5

6    124.6. Plaintiffs reaffirm and reallege the above paragraphs 1-59 hereinabove as if set forth

7    more fully herein below. The subject loan, note, and mortgage was structured so as to create the

8    appearance of a higher value of the real property than the actual fair market value.

9    124.7. Plaintiffs are informed and believes and thereon alleges that, at all times herein mentioned,

10   each of the defendants sued herein was the agent and employee of each of the remaining defendants

11   and was at all times acting within the purpose and scope of such agency and employment.

12   124.8. Defendants disguised the transaction to create the appearance of the lender being a

13   properly chartered and registered financial institution authorized to do business and to enter into the

14   subject transaction when in fact the real party in interest was not disclosed to Plaintiffs, as aforesaid,

15   and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties

16   who participated in this unlawful scheme.

17   124.9. Said real party in interest, i.e., the source of funding for the loan and the person to whom the

18   note was transmitted or eventually "assigned" was neither a financial institution nor an entity or

19   person authorized, chartered or registered to do business in this State nor to act as banking, lending or

20   other financial institution anywhere else.

21   124.10. As such, this fraudulent scheme, (which was in actuality a plan to trick the Plaintiffs

22   into signing what would become a negotiable security used to sell unregulated securities under

23   fraudulent and changed terms from the original note) was in fact a sham to use Plaintiffs interest in the

24   real property to collect interest in excess of the legal rate.

25

26

27

28                              25

124.11. The transaction involved a loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under state and federal law. The "formula rate" referenced in those laws was exceeded by a factor in excess of 10 contrary to the applicable law and contrary to the requirements for disclosure under TILA and HOEPA.

125.12. Under Applicable law, the interest charged on this usurious mortgage prevents any collection or enforcement of principal or interest of the note, voids any security interest thereon, and entitles the Plaintiffs to recovery of all money or value paid to Defendants, plus treble damages, interest, and attorney fees.

125.13. Under Applicable Law Plaintiffs are also entitled and demand a permanent injunction be entered against the Defendants (a) preventing them from taking any action or making any report in furtherance of collection on this alleged debt which was usurious, as aforesaid (b) requiring the records custodian of the county in which the alleged mortgage and other instruments are recorded to remove same from the record,

(c) allowing the filing of said order in the office of the clerk of the property records where the subject property, "Loan transaction" and any other documents relating to this transaction are located and (d) dissolving any claim of the defendants.

**COUNT X11 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

126. The actions of the defendants, and each of them have resulted in the Plaintiffs as the homeowners now being faced with the possibility of losing the property where the Plaintiffs reside. This possibility has been created without any right or privilege on the part of the defendants and, as such, their actions constitute outrageous or reckless conduct of the defendants.

127. Defendants, and each of them committed the acts set forth above with complete, utter and reckless disregard of the probability of causing the Plaintiffs to suffer severe or extreme emotional

26

distress.

128. The outrageous conduct of the defendants, and each of them, was by no stretch of the imagination privileged, and is the actual and proximate cause of the severe or extreme emotional distress suffered by the Plaintiffs.

129. The defendants act and each of them have resulted the Plaintiffs suffering severe emotional distress and therefore the Plaintiffs entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conducts.

**RELIEF SOUGHT**

WHEREFORE, having set forth numerous legally sufficient causes of actions against the Defendants, Plaintiffs pray for the entry of Final Judgment against all Defendants jointly and severally in an amount not yet quantified but to be proven at trial and such other amounts to be proven at trial, and for costs and attorneys' fees; that the Court find that the transactions,  the subject of this action are illegal and are deemed void; that the foreclosure which was instituted be deemed and declared illegal and void and that further proceedings in connection with the foreclosure be enjoined; and for any other and further relief which is just and proper. Plaintiffs demand trial by jury of all matters so triable as a matter of right.

DATED: 30 JULY _____ 2009

Respectfully submitted,

McLudy A. Atendido, Pro se

Elizabeth I. Atendido, Pro se

27

**AFFIDAVIT**

We, Mcludy Atendido and Elizabeth Atendido are the Plaintiffs in the above-entitled action. We have read the foregoing and know the contents thereof. The same is true of our own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe it to be true.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at San Diego, California. Executed this _30_ day of _July_ 2009.

_____
Mcludy A. Atendido

_____
Elizabeth I. Atendido

**JURAT**

STATE OF CALIFORNIA )
                                   )SS
COUNTY OF SAN DIEGO )

Subscribed and sworn to before me on this _30th_ day of _July_ 2009 by Mcludy A. Atendido, and Elizabeth I. Atendido proved to me on the basis of satisfactory evidence to be the persons who appeared before me.

_____
NOTARY PUBLIC

Commission expires _5/27/12_

AMY LYNN POUNTAIN
Commission # 1799359
Notary Public - California
San Diego County
My Comm. Expires May 27, 2012

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF ORANGE
*Mcludy A. Atendido v. California Reconveyance, et al.*
USDC Case No. Pending

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is **ADORNO YOSS ALVARADO & SMITH, 1 MacArthur Place, Santa Ana, CA 92707.**

On September 21, 2009, I served the foregoing document described as **NOTICE OF REMOVAL** on the interested parties in this action.

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

### SEE ATTACHED SERVICE LIST

☒ **BY REGULAR MAIL:** I deposited such envelope in the mail at 1 MacArthur Place, Santa Ana, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED.**

☐ **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☐ **BY OVERNIGHT MAIL:** I deposited such documents at the Overnite Express or Federal Express Drop Box located at 1 MacArthur Place, Santa Ana, California 92707. The envelope was deposited with delivery fees thereon fully prepaid.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 21, 2009, at Santa Ana, California.

*Veronica Delgado*
Veronica Delgado

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

1094030.1

**SERVICE LIST**
Mcludy A. Atendido v. California Reconveyance, et al.
USDC Case No. Pending

Mcludy A. Atendido
Elizabeth I . Atendido
492 Old Trail Drive
Chula Vista, CA 91914

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

PROOF OF SERVICE

1094030.1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen G. Larson and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## EDCV09- 1791 SGL (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [X] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself [X] ) | DEFENDANTS |
|---|---|
| MCLUDY A. ATENDIDO, ELIZABETH I. ATENDIDO, | CALIFORNIA RECONVEYANCE COMPANY, WASHINGTON MUTUAL BANK, AND DOES 1-10 INCLUSIVE |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Mcludy A. Atendido<br>Elizabeth I. Atendido<br>492 Old Trail Drive<br>Chula Vista, CA 91914 | S. Christopher Yoo<br>LaShon Harris<br>Adorno, Yoss, Alvarado & Smith<br>1 MacArthur Place, Suite 200<br>Santa Ana, CA 92707<br>(714) 852-6800-telephone |

**II. BASIS OF JURISDICTION** (Place an X in box only.)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify):
- [ ] 6 Multi-District Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [ ] Yes [X] No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** [ ] Yes [X] No [X] **MONEY DEMANDED IN COMPLAINT: $** 75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

HOEPA, TILA, 15 USC SECTION 1601 (RESPA & FCRA)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| [ ] 400 State Reapportionment | [ ] 110 Insurance | [ ] 310 Airplane | [ ] 370 Other Fraud | [ ] 510 Motions to Vacate Sentence Habeas Corpus | [ ] 710 Fair Labor Standards Act |
| [ ] 410 Antitrust | [ ] 120 Marine | [ ] 315 Airplane Product Liability | [ ] 371 Truth in Lending |  | [ ] 720 Labor/Mgmt. Relations |
| [ ] 430 Banks and Banking | [ ] 130 Miller Act | [ ] 320 Assault, Libel & Slander | [ ] 380 Other Personal Property Damage | [ ] 530 General | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act |
| [ ] 450 Commerce/ICC Rates/etc. | [ ] 140 Negotiable Instrument | [ ] 330 Fed. Employers' Liability | [ ] 385 Property Damage Product Liability | [ ] 535 Death Penalty | |
| [ ] 460 Deportation | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 340 Marine | | [ ] 540 Mandamus/ Other | [ ] 740 Railway Labor Act |
| [ ] 470 Racketeer Influenced and Corrupt Organizations | | [ ] 345 Marine Product Liability | **BANKRUPTCY** | [ ] 550 Civil Rights | [ ] 790 Other Labor Litigation |
|  | [ ] 151 Medicare Act | [ ] 350 Motor Vehicle | [ ] 422 Appeal 28 USC 158 | [ ] 555 Prison Condition | [ ] 791 Empl. Ret. Inc. Security Act |
| [ ] 480 Consumer Credit | [ ] 152 Recovery of Defaulted Student Loan (Excl. Veterans) | [ ] 355 Motor Vehicle Product Liability | [ ] 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| [ ] 490 Cable/Sat TV | | [ ] 360 Other Personal Injury | **CIVIL RIGHTS** | [ ] 610 Agriculture | [ ] 820 Copyrights |
| [ ] 810 Selective Service | [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 362 Personal Injury- Med Malpractice | [ ] 441 Voting | [ ] 620 Other Food & Drug | [ ] 830 Patent |
| [ ] 850 Securities/Commodities/ Exchange | [ ] 160 Stockholders' Suits | [ ] 365 Personal Injury- Product Liability | [ ] 442 Employment | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 840 Trademark |
| [ ] 875 Customer Challenge 12 USC 3410 | [ ] 190 Other Contract | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| [X] 890 Other Statutory Actions | [ ] 195 Contract Product Liability | | [ ] 444 Welfare | [ ] 630 Liquor Laws | [ ] 861 HIA (1395ff) |
| [ ] 891 Agricultural Act | [ ] 196 Franchise | **REAL PROPERTY** | [ ] 445 American with Disabilities - Employment | [ ] 640 R.R. & Truck | [ ] 862 Black Lung (923) |
| [ ] 892 Economic Stabilization Act | **REAL PROPERTY** | [ ] 210 Land Condemnation | | [ ] 650 Airline Regs | [ ] 863 DIWC/DIWW (405(g)) |
| [ ] 893 Environmental Matters | [ ] 210 Land Condemnation | [ ] 220 Foreclosure | [ ] 446 American with Disabilities - Other | [ ] 660 Occupational Safety/Health | [ ] 864 SSID Title XVI |
| [ ] 894 Energy Allocation Act | [ ] 220 Foreclosure | [ ] 230 Rent Lease & Ejectment | **IMMIGRATION** | [ ] 690 Other | [ ] 865 RSI (405(g)) |
| [ ] 895 Freedom of Info. Act | [ ] 230 Rent Lease & Ejectment | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| [ ] 900 Appeal of Fee Determi- nation Under Equal Access to Justice | [ ] 240 Torts to Land | [ ] 245 Tort Product Liability | [ ] 463 Habeas Corpus- Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 950 Constitutionality of State Statutes | [ ] 245 Tort Product Liability | [ ] 290 All Other Real Property | [ ] 465 Other Immigration Actions | | [ ] 871 IRS - Third Party 26 USC 7609 |
|  | [ ] 290 All Other Real Property | | [ ] 440 Other Civil Rights | | |

**FOR OFFICE USE ONLY:** Case Number: **EDCV09 -1791 SGL (RCx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)      CIVIL COVER SHEET      Page 1 of 2
CCD-JS44

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF ORANGE

*Mcludy A. Atendido v. California Reconveyance, et al.*

USDC Case No. Pending

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is **ADORNO YOSS ALVARADO & SMITH, 1 MacArthur Place, Santa Ana, CA 92707.**

On September 21, 2009, I served the foregoing document described as **CIVIL COVER SHEET** on the interested parties in this action.

☒  by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒  **BY REGULAR MAIL:** I deposited such envelope in the mail at 1 MacArthur Place, Santa Ana, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED.**

☐  **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☐  **BY OVERNIGHT MAIL:** I deposited such documents at the Overnite Express or Federal Express Drop Box located at 1 MacArthur Place, Santa Ana, California 92707. The envelope was deposited with delivery fees thereon fully prepaid.

☐  **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 21, 2009, at Santa Ana, California.

*Veronica Delgado*
Veronica Delgado

1094030.1

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

1

**SERVICE LIST**
Mcludy A. Atendido v. California Reconveyance, et al.
2          USDC Case No. Pending

3

Mcludy A. Atendido
4   Elizabeth I . Atendido
    492 Old Trail Drive
5   Chula Vista, CA 91914

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

PROOF OF SERVICE

1094030.1